CITY OF BLACKWELL V. CROSS, *Secretary of State.*

No. 485.   Opinion Filed December 1, 1908.

(98 Pac. 905.)

1.  **MANDAMUS—Public Officers—Anticipated Duty.** The courts will not by mandamus compel an officer to perform an anticipated duty which he may never be obligated under the law to perform.

2.  **COUNTIES—Geographical Centers—Duty of Secretary of State.** The certificate of the Secretary of State as to the geographical center of any county, provided for by section 6, art. 17, Const. (Bunn's Ed. sec 333), is intended as a guidance to those whose duty it is to determine and declare the result of county seat elections, and the Secretary of State is not required to prepare same until it is needed for that purpose.

(Syllabus by the Court.)

Application by the City of Blackwell for writ of mandamus to Bill Cross, Secretary of State.   Motion to quash sustained.

Plaintiff files its petition in this court, asking for a writ of mandamus to compel the defendant, the Secretary of State, to relocate the geographical center of Kay county, and in doing so not to include in his computation the land embraced in the Chilocco Indian Industrial School reservation, but that he exclude the same from within the boundaries of said Kay county, and that he ascertain by measurement the distance from said geographical center to the nearest corporate limits of the city of Newkirk, and make certificate thereof as by law required.

Plaintiff's petition is voluminous, and the facts upon which it relies for its cause of action are alleged in detail. We shall not attempt to restate them here in full, but shall only state such parts as are necessary to the consideration of this case at this time, which are in substance as follows: The city of Blackwell is a municipal corporation located in Kay county. The city of Newkirk is a municipal corporation located in said county, and was upon the admission of the state into the Union, and is now, the

county seat of said county.   The defendant, Bill Cross, is now, and has been since the admission of the state, the duly elected, qualified and acting Secretary of State.   Subsequent to four months after the admission of the state, a petition was duly filed with the Governor, signed by more than 25 per cent. of the voters of Kay county, determined in the manner provided. by law, asking for an election to relocate the county seat of said county.   An election for such purpose was called by the Governor, and the same was held on the 3d day of October, 1908.   At said election the city . of Blackwell, the city of Newkirk, and Ponca City were candidates for designation as the permanent county seat, but neither of said candidates received sufficient votes under the law to entitle it to designation as the permanent county seat.   As a result a second election has been called, as is by the Constitution provided, to be held on the 2d day of December, 1908.   At the election formerly held the cities of Blackwell and Newkirk received the highest number of votes, and therefore are the only candidates to be voted upon at the coming election.   On the 17th day of June, 1908, the Secretary of State proceeded to ascertain the geographical center of Kay county and the distance by measurement from said center to the nearest corporate limits of the city of Newkirk, and made his certificate of such location, and attached thereto a plat of the county, a copy of which is filed with plaintiff's petition.   By this certificate and plat it appears that the geographical center of Kay county is at a point about 250 feet east and about 945 feet south of the center of section 13, in township 27 north, of range 1 east, of the Indian Meridian in said county, and that the nearest corporate limits of said city of Newkirk is 7/100 of a mile more than 6 miles from said geographical center.   Afterwards, on the 22d day of July, 1908, the Secretary of State proceeded again to ascertain the geographical center of said county, and made his second certificate, showing a relocation, and attached thereto a second plat of the county, by which certificate the geographical center of said county is shown to be at a point about 1,100 feet east

and about 65 feet north of the center of section 13, in township 27 north, of range 1, east of the Indian Meridian, which would make the nearest corporate limits of the city of Newkirk 5 83/100 miles from the geographical center of said county. This last certificate and plat are also attached to plaintiff's petition.

Plaintiff alleges that the last certificate of the defendant, dated July 22, 1908, is incorrect, and that the city of Newkirk is more than six miles from the geographical center of the county; that the Secretary of State in ascertaining the geographical center of the county, as located by his second certificate, took into consideration a tract of land reserved by the United States for industrial school purposes, and known as "Chilocco Indian Industrial School Reservation," consisting of about 13 sections of land, all in township 29 north, range 2 east, of the Indian Meridian. This tract of land was reserved by executive order July 12, 1884, for use of and in connection with the Chilocco Indian Industrial School, and the same made not subject to public settlement until further action of Congress, and to be continued to be reserved for the purposes for which the same was set apart in said executive order. And it is alleged in plaintiff's petition that said reservation has never been at any time open to settlement or occupancy or subject to the jurisdiction of the state of Oklahoma, but that the same has at all times and is now under the exclusive jurisdiction and control of the government of the United States; that the same had never become a part of the territory of Oklahoma, and has never become a part of the state or of any county or municipal subdivision thereof. Plaintiff, prior to the bringing of this action, demanded of defendant that he ascertain the geographical center of said county, and in doing so that he exclude from within the boundaries thereof said reservation, and that he ascertain by measurement the distance from such center, so found, to the nearest corporate limits of the city of Newkirk, and defendant refused to comply with this request.

Defendant has filed a motion to quash the alternative writ of

mandamus issued by this court and an answer to the alternative writ which, by agreement of counsel, are to be considered together.

*John S. Berger,* City Atty., *Henry E. Asp,* and *Devereux & Hildreth,* for plaintiff.

*C. L. Pinkham* and *J. F. King,* for defendant.

. Hayes, J. (after stating the facts as above). Several propositions are presented by the pleadings in this case and have been ably discussed by counsel, but one of defendant's contentions under his motion to quash the alternative writ is that this action is prematurely brought, that plaintiff has no clear legal right to the relief he seeks, and that defendant is required by no duty under the law to do at this time that which plaintiff seeks to have him coerced to do. We shall consider this contention first, for it follows that, if defendant's contention is correct in this, the relief which plaintiff seeks should not be granted.

The state is divided into 75 counties, and temporary county seats are designated by the Constitution. Sections 6-8, art. 17, Const.; sections 326-410, Bunn's Ed. The first paragraph of said section 6 provides that the county seats therein named shall remain such until changed by vote of the qualified electors of any such county in the manner therein provided. The second paragraph of this section provides upon what conditions and by whom such election may be called. The third paragraph directs the manner of holding the election, and how candidates for designation as county seats may have their names placed upon the ticket. The fourth paragraph directs that the returns of the vote cast at any such election shall be made by the board of canvassers to the Governor who shall declare the result and cause the will of the electors to be carried into effect. The succeeding paragraph lays down the rules which shall govern in determining the results of any such election in the following words:

"If a majority of all the votes cast in the county at such county seat election shall be in favor of any town, such town shall thereafter be the county seat: Provided, however, that where the county seat

named in this Constitution is within six miles of the geographical · center of the county (said geographical center to be determined by certificate from the Secretary of State, and said distance to be determined by measurement from said geographical center to the nearest corporate limits of such county seat, as they existed on the twenty-first day of January, nineteen hundred and seven), it shall require sixty per centum of the total vote cast at such election by the competing town to effect the removal of such county seat, unless,   *   *   *?"

The time when the Secretary of State shall prepare and furnish his certificate of location of the geographical center of any county and the distance of the same from the temporary county seat is not fixed by any specific language in the Constitution, and we are therefore compelled to look to the whole text of the Constitution relative to elections for the removal of county seats to determine when· it becomes the duty of the Secretary of State to make such certificate.   It certainly did not become the duty of the Secretary of State upon the admission of the state and his advent into office to prepare such certificates for every county in the state, nor is it made an act prerequisite to the calling and holding of a county seat election.   In those paragraphs prescribing the conditions upon which the election shall be called and the manner in which the same shall be held no reference is made to this duty of the Secretary of State.   It is in those provisions providing for the determining and declaring of the results we find such duty imposed· upon him.   The .purpose of this certificate is not in any way to aid in the calling and holding of the election and could have no such effect; but the framers of the Constitution and the people who adopted it recognized that there might be instances where the location of a temporary county seat relative to the geographical center would be such that there would be controversy and doubt as to whether the same was within six miles thereof; and it was to provide the Governor, whose duty it is to determine the result and declare the same, with some disinterested and reliable means of ascertaining such fact that it was provided that the Secretary of State should prepare such certificate.   The purpose

of this certificate is not in any way made to favor or injure the candidacy of any town, but to aid those whose duty it is to determine and declare the result of such election by ascertaining for him a fact that might be difficult to ascertain otherwise. The Secretary of State is not required to make and furnish the certificate until the same becomes necessary to the Governor to ascertain and declare the will of the electors. The certificate in this case may never become necessary; for, although the city of Newkirk be not within six miles of the geographical center, if it receives at the coming election more than 50 per cent. of the votes cast, such certificate would be unnecessary; and likewise, if said city be within six miles of the center and the city of Blackwell receives more than 60 per cent. of the votes cast, it would be unnecessary. It is not shown that such certificate has yet become necessary to the Governor for whose benefit and guidance it is primarily intended, or that he has requested same. It is not the duty of the Secretary now, and we cannot say that it will ever be his duty, to act. The courts will not by mandamus compel an officer to perform an anticipated duty which he may never be obligated under the law to perform. Shortt on Information, 272; *State ex rel. Kelley v. Bonnell*, 119 Ind. 494, 21 N. E. 1101; *Board of Commissioners of Public School of Allegany County v. County Commissioners of Allegany County*, 20 Md. 449.

The fact that the Secretary of State has voluntarily heretofore prepared two certificates locating the geographical center of Kay county, the first of which he became convinced was not correct, and the last of which plaintiff contends is incorrect, affords no legal reason that has been brought to our attention that he should now be required by mandamus to do that which the law does not and may never require him to do. If it ever becomes the duty of the Secretary of State to prepare a certificate as provided by said section of the Constitution, the presumption is he will faithfully discharge that duty. If he then has doubts as to what his duties under the law are, he has at his command the

Vol. 22—48

advice and counsel of the Attorney General whose duty it is to advise him. This court cannot presume in advance of the time the law imposes upon him a duty to be performed that, when the time comes, he will misinterpret the law and refuse to act, or acting, perform that duty in such an erroneous way that it will amount to no performance under the law, and this court will not use the writ of mandamus as a means of becoming the legal adviser of the different departments of the government as to what their duties are.

As to the other propositions presented, to wit, whether the Chilocco Indian Industrial School reservation is in Kay county, and whether the duty of the Secretary of State to ascertain the geographical center of a county and to make his certificate showing the same and ascertain the distance by measurement from the center to the nearest corporate limits of the temporary county seat is such a duty as the court will by mandamus compel him in the discharge thereof to exclude from his consideration certain territory, the court at this time expresses no opinion. For the reasons already assigned, defendant's motion to quash should be sustained.

All the Justices concur.